IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| JOSE L. NIEVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 319-002 |
| | ) |
| STACY MOODY, Correctional Officer, | ) |
| | ) |
| Defendant. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, currently incarcerated at Baldwin State Prison and formerly incarcerated at Telfair State Prison ("TSP"), is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case, filed pursuant to 42 U.S.C. § 1983. Before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED**, (doc. no. 29), Defendant's motion for summary judgment be **GRANTED**, (doc. no. 25), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

**I.     PROCEDURAL BACKGROUND**

Plaintiff originally named two Defendants in his complaint. However, as Plaintiff is proceeding IFP, the Court screened the complaint and United States District Judge Dudley H. Bowen, Jr., dismissed Defendant O'Neal, a former Warden at TSP. (See doc. nos. 7, 9.) The Court allowed Plaintiff to proceed with an Eighth Amendment claim against Defendant Moody,

a correctional officer at TSP, based on allegations of deliberate indifference to a serious medical need.  (Doc. no. 6.)

According to the original Scheduling Notice, discovery was to have closed on October 31, 2019, with summary judgment motions due November 29, 2019, and the last day to file motions, excluding motions in limine, was November 30, 2019.  (See doc. no. 15.)  After two extensions of deadlines, discovery closed January 10, 2020, and motions for summary judgment were due February 10, 2020.  (See doc. nos. 17, 21.)  Defendant filed her summary judgment motion on February 10th, and the Clerk of Court issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding, thereby satisfying the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*).  The Clerk's notice informed Plaintiff his opposition to Defendant's motion must be filed on or before March 2, 2020.  (Doc. no. 26.)

After the deadline for filing summary judgment motions but before the deadline to respond to Defendant's motion, Plaintiff filed a motion for extension of "the summary judgement [sic] March 2nd deadline for responding to Defendant's motion."  (Doc. no. 27.)  In granting that motion in part, the Court explained Plaintiff's deadline to file his own summary judgment motion had already expired at the time he signed his request for an extension, but the Court would extend his deadline to respond to Defendant's motion until March 20, 2020.  (Doc. no. 28.)  Instead of responding to Defendant's motion, Plaintiff filed, without obtaining the Court's permission, his own, untimely motion for summary judgment.  (Doc. no. 29.)

2

Although Defendant argued her own motion was technically unopposed, she nonetheless filed her opposition to Plaintiff's unauthorized motion. (Doc. no. 31; doc. no. 31-1, p. 7 n.3.)

As set forth in detail below, the Court considers, where permissible, the information in Plaintiff's untimely motion as timely opposition to Defendant's summary judgment, but not as a proper motion for summary judgment. See Pollo Campestre, S.A. de C.V. v. Campero, Inc., Case No. 19-20001-Civ-SCOLA/TORRES, 2019 WL 3752575, at *3 (S.D. Fla. Aug. 8, 2019) (collecting cases affirming court authority to maintain control of its docket and enforce deadlines to ensure fairness to all sides); Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."); see also United States v. One Piece of Real Prop., 363 F.3d 1099, 1101 (11th Cir. 2004) ("Thus, the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." (citation omitted)).

## II. FACTS

### A. Scope of Undisputed Facts

In accordance with Local Rule 56.1, Defendant submitted with her motion for summary judgment a Statement of Material Facts to Which Defendant Moody Contends There Is No Genuine Issue to Be Tried. (Doc. no. 25-5, hereinafter "SMF").) As evidentiary support for her SMF, Defendant relies, *inter alia*, on (1) the Declaration of Stacy Moody (Moody Decl., doc. no. 25-1); (2) the Declaration of Willie Simmons, a correctional officer at TSP, (Simmons

3

Decl., doc. no. 25-2); (3) Plaintiff's Deposition[1] (Pl.'s Dep., doc. no. 25-3); and (4) the pleadings of record. The Simmons Declaration references an attached Exhibit A, (¶ 14), but the record does not reflect an Exhibit A was submitted. (See doc. no. 25-2.)

In response, Plaintiff filed a Statement of Material Facts to Which Plaintiff Contends There Is Genuine Issue to Be Tried that does not correspond to Defendant's SMF but relies on the same evidence submitted by Defendant, along with pictures of Plaintiff's thumb after he received treatment at a local hospital. (Doc. nos. 29-1, 29-7.) The statement of claim submitted by Plaintiff with his motion is a recitation of his original statement of claim in his complaint. Cf. doc. no. 1, p. 5 with doc. no. 29-6.

Because Plaintiff did not provide a statement of material facts directly refuting Defendant's SMF, the Court deems admitted all portions of Defendant's SMF having evidentiary support in, and not otherwise contradicted by, the record and which are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56. See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (same). Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a

---

[1] Because Plaintiff's deposition was filed in Minu-Script, the Court cites to the relevant deposition page number, not the page number assigned by the Court's docketing system.

4

summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).

Lastly, Defendant "does not necessarily concede that these facts [in the SMF] accurately describe what occurred, but she does submit these are the operative facts for purposes of summary judgment." (Doc. no. 25-5, p. 1 & n.1.) Indeed, it is well-settled, "the 'facts,' as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case." Williams v. Davis, 451 F.3d 759, 763 (11th Cir. 2006). "That is, courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and "when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version.*" (Id. (citation omitted).) Accordingly, the Court will review the record "to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009).

**B.    Events Leading Up to Accident**

The general outline of events occurring prior to the point at which Plaintiff's thumb got caught in his cell door on June 13, 2018, is undisputed. Defendant came into Plaintiff's dormitory, B-1, and announced "store call," which involves rolling a cart with items made available for inmate purchase through the dormitory. (Pl.'s Dep., p. 46; Moody Decl., ¶ 4; Simmons Decl. ¶ 4.) In preparation for store call, inmates must return to their cells and prepare for lockdown. (Pl.'s Dep., p. 47; Moody Decl. ¶ 5; Simmons Decl. ¶ 6.) Plaintiff heard Defendant slamming cells doors closed prior to the point at which she arrived at his cell. (Pl.'s Dep., pp. 49-50.) When Defendant

arrived at Plaintiff's cell, his roommate had not yet returned, and Plaintiff resisted Defendant's command to close his cell door.  (Id. at 51; Moody Decl. ¶ 6.)

In contravention of prison policy, a rag had been placed on the top of Plaintiff's cell door to prevent it from completely closing and locking.  (Pl.'s Dep., pp. 53-55; Moody Decl. ¶ 11; Simmons Decl. ¶ 15.)  Defendant removed the rag from the top of the door more than once in an attempt to close the door.  (Pl.'s Dep., pp. 56-58; Moody Decl. ¶¶ 9, 10, 12.)  In the course of the back and forth between Defendant removing the rag from the door and Plaintiff attempting to retrieve the rag, the cell door closed on Plaintiff's thumb, resulting in the top of Plaintiff's thumb severing at the first joint and landing on the floor.  (Pl.'s Dep., pp. 60-61; Moody Decl. ¶ 14.)

Plaintiff conceded during his deposition that the severing of his thumb was an accident, and Defendant did not intend to slam the door on his thumb.  Although the Complaint alleged Defendant "maliciously slammed the door on my right hand," (doc. no. 1, p. 5), Plaintiff conceded in his deposition the cell door was already closing when he tried to pick up the rag Defendant had thrown on the floor, and he did not realize he put his hand on the closing cell door.  (Pl.'s Dep., p. 59.)  Plaintiff described Defendant as "spooked," "surprised," "shocked," and "couldn't believe that she just did what she did" when she realized the top of Plaintiff's thumb was on the floor.  (Id. at 69; see also id. at 60 (describing Plaintiff and Defendant both looking at top of cell door for impediment to door closing because neither realized top of Plaintiff's thumb caught in door); Moody Decl. ¶ 14 (describing shock at realization of accident and injury); doc. no. 29-2, p. 3 (describing Defendant's response as fleeing scene of accident).  Moreover, the briefing points to no evidence suggesting Defendant intentionally slammed the door knowing Plaintiff's thumb

6

would be caught in the door, and both sides argue only about a claim for deliberate indifference once it became clear Plaintiff had been injured.

### C. Plaintiff's Version of Defendant's Response

Plaintiff asserts Defendant did not know his thumb had severed until he reached down, grabbed his thumb off the floor, and showed it to her. (Pl.'s Dep., p. 61.) Defendant looked at the thumb, did not say a word, and ran away. (Id. at 61-62.) Two fellow inmates who saw Plaintiff bleeding quickly arrived and helped him down the steps of the dormitory to the sally port, which upon arrival was full of other inmates trying to enter the dormitory while Plaintiff was trying to exit. (Id. at 63, 73-74, 75-76.) The inmates assisting Plaintiff tried to get the attention of Officer Simmons, who reacted to the sight of Plaintiff's injury by letting Plaintiff out of the sally port while radioing for assistance to get Plaintiff to the medical department. (Id. at 64.)

When Defendant ran away from Plaintiff's cell, she did not have a radio with her, and Plaintiff next saw her alone in the control room while Officer Simmons was outside. (Id. at 70.) Plaintiff does not believe Defendant ran away from his cell to get help because she was not outside with Officer Simmons, and Officer Simmons did not know Plaintiff had been injured until she saw his injury. (Id. at 72-73.) Plaintiff believes Defendant "had plenty of time" to retrieve her radio or phone and call for help, but she did nothing. (Id. at 73.) Rather, Officer Simmons used her radio to call for an escort to help Plaintiff to the medical department. (Id. at 78-79.) Plaintiff estimates about ten to fifteen minutes elapsed between the time of his injury and his escort to the medical department. (Id. at 80-81.) He was transported to Dodge

County Hospital, where a surgeon did not reattach the severed portion of his thumb because of issues with how TSP medical personnel packed the severed portion of Plaintiff's thumb for transport and instead clipped the bone and stitched the wound. (Id. at 86-87.)

### D. Defendant's Version of Response

That morning, Defendant was assigned as a control room officer and locked down Plaintiff's dormitory for store call upon Officer Simmons' request. (Moody Decl. ¶ 4; Simmons Decl. ¶ 6.)  After Defendant closed Plaintiff's cell door, Plaintiff informed Defendant his thumb was injured, but Defendant saw no blood and initially doubted Plaintiff's claims. (Moody Decl. ¶ 14.)  Defendant was shocked when Plaintiff showed her his injured thumb and the severed portion of the thumb on the floor. (Id.)  Defendant did not have a radio with her and was unable to call for assistance from the location of Plaintiff's cell. (Id. ¶ 15.)

Without means to call for help, Defendant ran toward the control room in search of assistance. (Id. ¶¶ 15-16.)  Officer Simmons, Plaintiff's more experienced co-worker, saw Defendant run out of the dormitory to the control room, where she "frantically reported" the injury and need for medical assistance to Officer Simmons. (Id. ¶ 17; Simmons Decl. ¶ 7.)  As Officer Simmons was the only other officer in the control room and protocol required one officer remain in the control room, Defendant stayed in the control room while Officer Simmons took her radio and checked on the cells in the dormitory where Defendant reported the need for assistance. (Moody Decl. ¶ 18; Simmons Decl. ¶ 8.)

Officer Simmons made her way to the exterior portion of the B-1 dormitory, where she encountered Plaintiff. (Simmons Decl. ¶ 9.)  Plaintiff was able to leave the dormitory because

8

Defendant, from inside the control room, unlocked two doors for Plaintiff to reach the dormitory's exterior and the pathway to medical assistance. (Moody Decl. ¶ 19; Simmons Decl. ¶ 13.) Approximately five minutes elapsed between Officer Moody informing Officer Simmons of the accident and Officer Simmons encountering Plaintiff outside the dormitory. (Simmons Decl. ¶ 12.) Within moments of encountering Plaintiff, Officer Simmons called for medical assistance on her radio, and medical personnel arrived a few minutes later and escorted Plaintiff to the TSP medical department. (Id. ¶ 11.)

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of

proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Plaintiff's Motion for Summary Judgment

As explained above, Plaintiff's motion for summary judgment is untimely and filed in contravention of the order granting him an extension of time to respond to Defendant's summary judgment motion. The motion is subject to a recommendation for denial on that basis alone. See Pollo Campestre, S.A. de C.V., 2019 WL 3752575, at *3; see also Moon, 863 F.2d at 837. In addition, Plaintiff appears to concede he is not entitled to summary judgment because his statement of facts provides "there is a genuine issue to be tried." (Doc. no. 29-1, p. 1.) For Plaintiff to prevail on his own motion at the summary judgment stage, he must show

there is *no* "genuine dispute as to any material fact" to establish he is entitled to judgment as a matter of law.  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).

Moreover, Plaintiff argues in his briefing that his "conclusory [sic] provides adequate support for a claim of deliberate indifference against Defendant Moody." (Doc. no. 29-2, p. 6.)  Of course, to prevail at the summary judgment stage, Plaintiff must do more than provide adequate support for a claim, he must show "on all the essential elements of [his] case . . . , no reasonable jury could find for" Defendant.  Four Parcels of Real Prop., 941 F.2d at 1438.  Thus, by definition, if Plaintiff is arguing only that he states a cause of action or is relying on the prospect of a jury trial to evaluate the merits of his case, he is not entitled to summary judgment.  For these reasons and the reasons set forth below as to why Defendant is entitled to summary judgment, Plaintiff's motion for summary judgment should be **DENIED**.  (Doc. no. 29.)

### C. Defendant's Motion for Summary Judgment

Defendant contends she is entitled to summary judgment on the merits of Plaintiff's Eighth Amendment claim, the protection of qualified immunity, and dismissal of any official capacity claim pursuant to the Eleventh Amendment to the United States Constitution.  Plaintiff argues Defendant's motion should be denied because Defendant (1) did not have a radio with her to call for help when Plaintiff's accident occurred; (2) fled the scene of the accident; and (3) failed to inform Officer Simmons of the specific reason medical assistance was needed in the B-1 dormitory.  As discussed in Part I and Part III(B), *supra*, Plaintiff did

11

not timely file a motion for summary judgment, but the Court will consider, as appropriate, the information in Plaintiff's motion as opposition to Defendant's motion.

### 1. Defendant Is Entitled to Summary Judgment in Her Official Capacity

The complaint does not identify the capacity in which Plaintiff sues Defendant. (See generally doc. no. 1.) The complaint, however, is clear Defendant was a correctional officer at a state prison at the time of the relevant events, and Plaintiff is seeking monetary damages. The Eleventh Amendment bars official capacity claims against state prison officials for monetary damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, to the extent Plaintiff raises any official capacity claim for monetary damages, that claim fails as a matter of law, and Defendant is entitled to summary judgment in her official capacity.

### 2. Defendant Is Entitled to Summary Judgment on the Merits of Plaintiff's Eighth Amendment Claim

#### a. Deliberate Indifference Standard

The Eighth Amendment requires that prisoners are afforded adequate food, clothing, shelter, and medical care, and prison officials must take reasonable measures to ensure prisoner safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To survive Defendant's motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (*per curiam*); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010)

12

(explaining that in addition to objective and subjective components of Eighth Amendment claim, plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim). To satisfy the objective component regarding a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).

To satisfy the subjective component that Defendant was deliberately indifferent, Plaintiff must present evidence that Defendant: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendant disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Melton, 841 F.3d at 1223. "A prisoner must show the defendant prison officials acted with a sufficiently culpable state of mind." Chandler v. Crosby, 379 F.3d 1278, 1290 (11th Cir. 2004) (citations omitted). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (*per curiam*) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim).

Furthermore, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986). "A defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference." Melton, 841 F.3d at 1223; see also Dang ex rel. Dang v. Sheriff, Seminole Cty., Fla., 871 F.3d 1272, 1280 (11th Cir. 2017) (explaining official disregards serious risk by more than mere negligence "when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate" (citation omitted)). In addition, a plaintiff alleging liability for deliberate indifference based on a delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1188, *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

### b. Defendant's Response to Plaintiff's Serious Thumb Injury Was Not Deliberately Indifferent

The parties do not dispute, and the Court readily concludes, the injury to Plaintiff's thumb was a serious medical need. Thus, the Court turns to the subjective component: was Defendant subjectively aware of a serious risk to Plaintiff's health that she disregarded by acting in a manner that constituted "more than mere negligence." Melton, 841 F.3d at 1223. The parties agree Defendant knew Plaintiff's thumb had been injured before she left Plaintiff's cell. (Pl.'s Dep., pp. 61-62; Moody Decl. ¶ 14.) The crux of the dispute turns on what Defendant did next and why.

Plaintiff did not have a radio with her when the injury occurred, and therefore could not call for help. (Moody Decl. ¶ 14.) With no way to radio for help, she ran to get help at the control room. (Id. ¶¶ 15-16.) Plaintiff faults Defendant for not having a radio with her. There is no evidence of a policy requiring Defendant to carry a radio at all times, and even if there were such a policy, "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000).

Plaintiff also argues Defendant should not have run away from his cell, but she did so only to find a co-worker who could call for assistance. (Moody Decl. ¶¶ 15-16.) Plaintiff does not believe Defendant ran to find help and instead believes Defendant did nothing. However, Plaintiff conceded at his deposition he has no personal knowledge of Defendant's actions after she left the scene. (Pl.'s Dep., pp. 72-73.) Plaintiff cannot create a genuine dispute of material

15

fact based on his factually unsupported beliefs.  See Sears v. Roberts, 922 F.3d 1199, 1208 (11th Cir. 2019) (explaining a plaintiff's testimony may be discounted if "it is blatantly contradicted by the record . . . meaning it relates to facts that could not have possibly been observed. . . ."); see also Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment.")  Both Defendant and Officer Simmons have sworn Defendant did seek help, "frantically" reporting medical assistance was needed for an injured person in Plaintiff's dormitory.  (Moody Decl. ¶ 17; Simmons Decl. ¶ 7.)

Plaintiff's criticism of Defendant being inside the control room when he exited the dormitory is equally baseless.  Prison protocol required one officer remain in the control room.  (Moody Decl. ¶ 18; Simmons Decl. ¶ 8.)  From the control room, Defendant unlocked doors that otherwise would have prevented Plaintiff from exiting his dormitory to obtain medical assistance.  (Moody Decl. ¶ 19; Simmons Decl. ¶ 13.)  Nor does Officer Simmons's lack of knowledge about Plaintiff's specific injury change the analysis, as Officer Simmons made her way from the control room, toward the dormitory to investigate the need for medical assistance and called for help on the radio "moments" after making initial contact with Plaintiff.  (Simmons Decl. ¶ 12.)  Plaintiff points to nothing in the record supporting a conclusion that the details of Plaintiff's injury would have changed the responsive actions set in motion when Defendant "frantically" reported the need for medical assistance in Plaintiff's dormitory.

Plaintiff asserts approximately ten to fifteen minutes elapsed from the time of his injury until he was met outside the dormitory and escorted to the medical department. (Pl.'s Dep., p. 80-81.) Officer Simmons avers approximately five minutes elapsed from the time Defendant arrived at the control room seeking medical assistance for an injured person until Officer Simmons encountered Plaintiff outside the dormitory and called for medical assistance on the radio. (Simmons Decl. ¶ 12.) Thus, under the time estimation most favorable to Plaintiff, no more than fifteen minutes passed while Plaintiff, assisted by two fellow inmates, (1) made his way down the stairs in his dormitory, (2) walked through at least two doors unlocked by Defendant from the control room, (3) walked through a sally port filled with inmates trying to enter while Plaintiff was trying to exit, and (4) was escorted to the TSP medical department.

To the extent Plaintiff alleges liability for deliberate indifference based on a delay measured in minutes for obtaining treatment, he has failed to allege, let alone "place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." See Hill, 40 F.3d at 1188. Plaintiff did provide deposition testimony describing the surgeon's inability to reattach his thumb because of allegedly wrongful actions taken by officials in the TSP medical department, (Pl.'s Dep., pp. 85-87), but those actions by medical personnel do not establish any detrimental effect caused by the mere minutes of delay which may have occurred because Defendant had to run to the control room for help. Stated otherwise, Plaintiff's claim also fails because he does not allege, let alone offer any evidence, he was injured by Defendant's acts or omissions with respect to any delay in calling for medical

17

assistance. See Cannon v. Corizon Med. Servs., 795 F. App'x 692, 698 (11th Cir. 2019) (*per curiam*).

In sum, while Plaintiff undoubtedly suffered a serious injury as a result of the cell door closing on his thumb, Plaintiff cannot show Defendant's response was deliberately indifferent. Accordingly, Defendant is entitled to summary judgment. See Melton, 841 F.3d at 1223.

    **c.**   **Plaintiff Did Not Intend to Assert a Claim for Intentional Injury, and Summary Judgment Would Be Appropriate Even If He Did**

Plaintiff concedes Defendant did not intentionally slam the cell door knowing Plaintiff's thumb would be caught in the door. Indeed, Plaintiff did not intend to assert a claim for intentional harm. In any event, even if there had been any record support for the general assertion in the complaint that Defendant "maliciously slammed" the cell door on his thumb, Plaintiff would have to satisfy a subjective and objective component as to that claim as well. Farmer, 511 U.S. at 834. Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation. See id. Subjectively, Plaintiff must show that the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). Thus, even acknowledging the seriousness of the injury to Plaintiff's thumb, there is nothing to suggest a subjective awareness by Defendant that her action of slamming Plaintiff's cell door, as she had done as she made her way throughout the dormitory, (Pl.'s Dep., pp. 49-50), would result in the injury to Plaintiff's thumb. Based on the testimony of both parties, no reasonable juror could find Defendant intended to injure Plaintiff.

### 3. Qualified Immunity

Because Defendant is entitled to summary judgment on the merits of Plaintiff's claim, the Court need not address Defendant's qualified immunity argument. See Scott v. Harris, 550 U.S. 372, 377 (2007) (requiring showing of violation of a constitutional right to complete qualified immunity analysis); Grochowski v. Clayton Cty., Ga., 961 F.3d 1311, 1319 (11th Cir. 2020) (same); see also Martinez v. Burns, 459 F. App'x 849, 851 n.2 (11th Cir. 2012) (*per curiam*) (recognizing no need to address qualified immunity defense when summary judgment granted on substance of deliberate indifference claim).

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED**, (doc. no. 29), Defendant's motion for summary judgment be **GRANTED**, (doc. no. 25), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 30th day of July, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA